**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**CHRISTOPHER J. ROBINSON,**

      **Plaintiff,**

**vs.**                              **Case No.  1:17cv213-MW/CAS**

**NANCY A. BERRYHILL, Deputy
Commissioner for Operations,
Social Security Administration,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Deputy Commissioner for Operations ("Commissioner") of the Social Security Administration (SSA) denying Plaintiff's application for Supplemental Security Income (SSI) pursuant to Title XVI of the Social Security Act.  After careful consideration of the entire record, it is respectfully recommended that the decision of the Commissioner be affirmed.

## I. Procedural History and Facts

On October 9, 2013, Plaintiff's father, on behalf of Plaintiff, applied for SSI benefits.  Tr. 23, 222-31.  Plaintiff received SSI based on his disability as a child with an onset of disability established as of October 9, 2013. Tr. 18, 23, 93-113.[1,2]  When Plaintiff reached the age of 18, the Commissioner was required to redetermine his eligibility for benefits under the adult standards for disability.  *Id.*  On November 12, 2014, it was determined that Plaintiff was no longer disabled as of November 1, 2014.[3] Tr. 18, 116-20.  The determination was upheld on reconsideration after a disability hearing before a State agency Disability Hearing Officer.  Tr. 121, 130-34.

On June 1, 2015, Plaintiff requested a hearing with an Administrative Law Judge (ALJ).  Tr. 148.  On October 7, 2015, the first of three hearings

---

[1] Citations to the transcript/administrative record contained in ECF No. 10 shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

[2] Plaintiff, by and through his father, was informed of the SSA's decision by letter dated March 18, 2014.  Tr. 93, 165.  The SSA stated, in part: "If he is still eligible for SSI because of disability or blindness for the month before his 18th birthday, we also must redetermine if he is disabled or blind. *We will do this by using the same rules we use for adults who file new disability claims.  We will do the disability redetermination after he becomes age 18.*"  Tr. 98 (emphasis added).

[3] Plaintiff alleges he is unable to work due to bipolar disorder, attention deficit hyperactive disorder (ADHD) post-traumatic stress disorder (PTSD), depressive disorder, impulse control disorder, Asperger's disorder, and mood disorder.  Tr. 57, 259.

was held by ALJ Guy Koster in Jacksonville, Florida.  Tr. 37.  Plaintiff appeared and testified but was not represented.  *Id.*  The ALJ advised Plaintiff of his right to be represented by either an attorney or a non-attorney representative and Plaintiff indicated his desire to have representation.  Tr. 38-39.  The hearing was postponed.  Tr. 39-41.  On January 29, 2016, the hearing reconvened and Plaintiff appeared with his dad.  Tr. 44.  The ALJ reiterated his prior statement to Plaintiff and his dad regarding the right to be represented by an attorney or non-attorney representative.  Tr. 46-48.  Plaintiff asked for another postponement that was granted.  Tr. 48-50.

Upon Plaintiff's request, a third hearing was held on May 18, 2016, before ALJ Koster by video in Jacksonville, Florida.  Tr. 18, 29, 52-90. Plaintiff, represented by counsel, Marcia Green, a non-attorney representative, Tr. 54, appeared and testified in Gainesville, Florida. Impartial vocational expert C. Kimball Heartsill appeared at the hearing and testified.  Tr. 84-89, 311-14 (Resume).  (On May 10, 2016, Ms. Green filed a lengthy pre-hearing memorandum.  Tr. 322-28.  Ms. Green did not argue that the record was incomplete.  *Id.*)  Plaintiff's representative did not object to Exhibits 1A through 15F being admitted into evidence.  Tr. 54.  The record includes office treatment records from Meridian Behavioral

Healthcare (Meridian) from April 25, 2016, to May 25, 2016, that were provided after the hearing and considered by the ALJ.  Tr. 25, 34, 634-41 (Exhibit 16F).

On June 27, 2016, the ALJ redetermined Plaintiff's continuing eligibility for SSI upon turning age 18 under section 1614(a)(3)(H) of the Social Security Act, that Plaintiff's disability ended on November 1, 2014, and he has not become disabled since that date.  Tr. 29.  The ALJ noted: "The medical evidence of record after the claimant's 18th birthday was reviewed in conjunction with a hearing held on March 11, 2015[,] at the disability unit of Disability Determination Services (Exhibits 7B and 8B)." Tr. 23.

On August 26, 2016, Plaintiff, by counsel, requested review of the ALJ's decision by the Appeals Council.  Tr. 221.  The Appeals Council denied review on June 19, 2017.  Tr. 1-6.  The decision of the ALJ became the final decision of the Commissioner and is ripe for review.  Accordingly, Plaintiff, appearing by counsel, filed a Complaint for judicial review pursuant to 42 U.S.C. §§ 1381, *et seq.,* and 42 U.S.C. § 405(g).  *See* ECF No. 1.

## II.  The Decision of the Administrative Law Judge

On June 27, 2016, the ALJ issued a decision finding that Plaintiff's disability ended on November 1, 2014.  Tr. 29.  The ALJ found that Plaintiff was eligible for SSI benefits as a child.  Tr. 18.  Plaintiff attained age 18 in May 2014 and was eligible for SSI benefits as a child for the month preceding the month in which he attained age 18.  He was notified that he was found no longer disabled as of November 1, 2014, based on a redetermination of disability under the rules for adults who file new applications.  Tr. 20.

The ALJ found that since November 1, 2014, Plaintiff has had the following severe impairments: autism spectrum disorder/pervasive developmental disorder; an effective disorder; history of oppositional defiant disorder (ODD); history of attention-deficit hyperactivity disorder (ADHD); history of specific learning disorder; and history of substance abuse.  *Id.*

Plaintiff was found not to have an in impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  In making this finding, the ALJ noted that Plaintiff's mental impairments do not satisfy "paragraph B" criteria in that they do not result in two of the following:

marked restriction of activities of daily living; marked difficulties in

maintaining social functioning; marked difficulties in maintaining

concentration, persistence, or pace; or repeated episodes of

decompensation, each of extended duration.  Tr. 20-21.  The ALJ found

*mild* limitation on Plaintiff's activities of daily living in that he is "able to live

independently in an apartment, work at an auto mechanic shop, and take

care of his personal needs and the needs of his dog."  Tr. 21.  The ALJ

noted that in March 2016, Plaintiff

> reported no deficits in activities of daily living (Exhibit 12F).  In
> contrast, his parents reported some deficits in this area with a need
> for prompting or assistance (Exhibits 8E and 13E).  The undersigned
> finds that the claimant does not generally appear to be prevented
> from initiating activities of daily living independent of supervision or
> direction and there is no indication that he would have serious
> difficulty performing these activities in a suitable manner or on a
> consistent, useful, routine basis with any more than mild limitation
> due to his impairments.

*Id.*

> The ALJ found *moderate* limitation in social functioning.  Plaintiff

> is often described in the treatment records as irritable or withdrawn,
> but he is also noted to be cooperative and reports that he has friends.
> He was polite and exhibited adequate social skills at both the hearing
> at Disability Determination Services and the hearing of the Office of
> Disability Adjudication and Review.  It is clear from the evidence that
> the claimant has some difficulties in this area that might cause him to
> be better suited for less social work environments, but he does not
> appear to have marked or extreme limitations that would preclude
> social contact.  As a result, the claimant's ability to function socially

appears to be moderately restricted and the undersigned has taken this into consideration in the [RFC] below.

*Id.*

Only *moderate* difficulty was found in Plaintiff's concentration,

persistence, or pace. The ALJ notes Plaintiff has

a history of ADHD and specific learning disorder, but he is consistently found to have average to above average intelligence with intact memory skills, full orientation, and fair insight and judgment. He was able to obtain his GED upon deciding to do so and he completed the Job Corps program. Further, he was able to perform work activity at the auto mechanic shop and was reportedly only fired from the job for flirting with a customer in an unprofessional manner. Therefore, while he might have some difficulty staying focused on more complex tasks, there is nothing in the record to suggest that the claimant is incapable of handling simple, routine, and repetitive tasks. As such, the undersigned finds that the claimant's concentration, persistence and pace are moderately restricted, which has been taken into account in the [RFC] below.

*Id. No* episodes of decompensation of extended duration were noted. *Id.*

The ALJ concluded that "paragraph C" criteria of Listing 12.02 were

not met in that there was no record of a chronic organic mental disorder of

at least two years' duration that has caused more than a minimal limitation

of ability to do basic work activities, along with symptoms or signs currently

attenuated by medication or psychosocial support, and any one of the

following: repeated episodes of decompensation of extended duration, a

residual disease process that that has resulted in marginal adjustment that

even a minimal increase in mental demands or change in the environment

would be predicted to cause decompensation, or a current history of one or more years' inability to function outside a highly supportive living arrangement.  Tr. 21-22.  The ALJ also considered the "paragraph C" criteria of Listings 12.04 and 12.06 and determined the criteria were not satisfied.  Tr. 22.  The ALJ noted that the limitations identified in the "paragraph B" criteria are not an RFC assessment, but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  *Id.*  Accordingly, the ALJ proceeded to the RFC determination.

In determining Plaintiff's RFC, the ALJ concluded that, after consideration of the entire record, Plaintiff has had, since November 1, 2014, the RFC to perform a full range of work at all exertional levels but with several non-exertional limitations:

> he is limited to performing simple, routine, and repetitive tasks, with short simple instructions, in a low stress and stable work environment, with few changes in the routine work setting, he could not work on assignments in tandem with others (i.e. no teamwork), no assembly line work or production rates or quotas, could only attend to tasks in two-hour segments during an eight-hour day, and would be limited to occasional interactions with the public, coworkers, and supervisors.

Tr. 22.  In support of this determination, the ALJ considered the medical evidence of record and Plaintiff's hearing testimony.[4]  Tr. 23-27.

---

[4]  Plaintiff argues the transcript/administrative record is incomplete because it does "not include any of the case development documents - such as a state agency

>The record indicates that the claimant was initially found disabled with an onset established as of October 9, 2013[,] on the basis that the severity of the claimant's impairments medically and functionally met the childhood disability standards (notably, the claimant had been in inpatient care overnight at Shands under the Baker Act in February 2013 and then participated in a residential treatment program at Springbrook Behavioral HealthCare for several months later that year per Exhibits 11F and 14F) [Tr. 554-67, 597-607]. Pursuant to Public Law 104-193, the claimant's file was reviewed to determine whether his impairments were severe enough to meet the requirements for adult disability benefits. His benefits were ceased in November 2014, as it was determined that the claimant was not disabled under the adult disability rules (Exhibit 3B) [Tr. 116-20]. The claimant appealed this determination and stated that he remains disabled due to mental health issues, delusions, and anger issues, as well as bipolar disorder, attention deficit hyperactivity disorder (ADHD), impulse control disorder and Asperger's disorder *(see e.g.,* Exhibit 4B) [Tr. 121]. The medical evidence of record after the claimant's 18th birthday was reviewed in conjunction with a hearing held on March 11, 2015[,] at the disability unit of Disability Determination Services (Exhibits 7B and 8B) [Tr. 130-41].

Tr. 23. Thereafter, the ALJ considered the evidence of record, including testimony at the March 2015 hearing noted above, Tr. 23-24, medical records from 2014 through May 2016, and Plaintiff's hearing testimony provided before the ALJ. Tr. 24-27. These included medical records from when Plaintiff underwent a psychiatric re-evaluation on July 11, 2014, follow-up visits in April 2015, a return to Meridian in March 2016 to

---

medical opinions (sic) as state agency performs (sic) - relevant to the March 18, 2014[,] decision which found plaintiff Robinson disabled as a (sic) the age of 17 1/2, into the evidence in this matter." ECF No. 18 at 6. This issue will be addressed herein. *See infra* at 15-25.

reestablish medication management and counseling, and a psychiatric

evaluation in later April 2016.[5]  Tr. 24-25.

>   After discussing the evidence, the ALJ summarized his findings.

>   In analyzing the claimant's subjective complaints, the first factor
>   the undersigned considered is the claimant's ability to perform
>   daily activities.  Notably, the claimant was able to obtain his GED,
>   complete a Job Corps program, and perform work activity on a
>   short-term basis.  He has also been able to live independently in
>   an apartment and take care of his personal needs and the needs
>   of his dog.  In March 2016, the claimant reported no deficits in
>   activities of daily living (Exhibit 12F) [Tr. 568-73].  In contrast, his
>   parents reported some deficits in this area with a need for
>   prompting or assistance (Exhibits 8E and 13E).  At the hearing on
>   May 18, 2016, the claimant testified that he takes care of his dog,
>   he interacts with friends and strangers (up to two hours on good
>   days), he reads books from the library, he eats meals with his
>   family, and he exercises (running, riding his bike, and doing
>   pushups). He has failed the driving test, so he does not have a
>   license.  When he lived in an apartment, he was able to handle all
>   of his daily needs and he only lost the apartment because he was
>   unable afford rent after losing his job.  This indicates that the
>   claimant is able to perform a fairly wide range of activities of daily
>   living, which is not entirely consistent with the allegations of an
>   inability to perform work activity.

>   With respect to the duration, frequency, and intensity of the
>   claimant's symptoms, the undersigned finds that the claimant
>   does have severe impairments that result in functional limitations,
>   but the findings in the record generally indicate that the claimant's

---

[5]  Plaintiff's medical records at Meridian date back to approximately 2013.
*See, e.g.*, Tr. 329-51 (Exhibit 1F), 352-76 (Exhibit 2F).  Medical (hospital) records from
Shands UF date from April 6, 2010, to March 26, 2013, and inpatient records from
Shands Vista Hospital dated February 2-3, 2003, Tr. 597-607 (Exhibit 14F), are
included in the record, Tr. 450-553 (Exhibit 10F), as are Plaintiff's education records
dated July 16, 2003, to July 20, 2010, from UF Psychiatry and Psychology.  Tr. 608-33
(Exhibit 15F).  These records are examples of information available to the ALJ pre-
dating Plaintiff's 18th birthday and the redetermination.

impairments are not debilitating and would not preclude work within the residual functional capacity above.  Although he does exhibit some difficulty in social functioning and focus, his mental status examinations are largely unremarkable and he exhibits significant adaptive functioning skills.  The undersigned finds that the discrepancy between the claimant's allegations and the evidence diminishes the persuasiveness of the claimant's subjective complaints and alleged limitations.

As to the medication taken to alleviate symptoms, the claimant has been prescribed appropriate medications for his impairments, but he does not appear to have been fully compliant with taking these medications at various points, which detracts from the persuasiveness of his statements and suggests that the symptoms may not have been as limiting as the claimant has alleged or that there is an aspect of self-limitation that is irrespective of impairment (i.e., volitional factors).  The undersigned finds the claimant's treatment history to be of a similar nature, with inconsistent attempts at treatment and counseling during the past two years.  This also appears to include at least a partial aspect of self-limitation that is irrespective of impairment as the claimant has admitted to treating sources that he has "worked the system" and "play[ed] along" in order to get what he wants (i.e., released from treatment, discontinuing medication, etc.).  Such behavior renders the claimant's subjective statements less persuasive and is not consistent with the alleged level of impairment.

The undersigned does not find that there are other factors concerning the claimant's functional limitations and restrictions due to symptoms; therefore, after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some, if not all, of the alleged symptoms.  Regardless, the evidence discussed above suggests greater ability and sustained capacity than alleged by the claimant; therefore, the undersigned concludes that the claimant's subjective complaints and alleged limitations are not fully persuasive and he retains the capacity to perform work activities within the limitations set forth above.

As for the opinion evidence, the mental residual functional capacity conclusions reached by State agency psychological consultants Sharon Ames-Dennard, PhD, and Maxine Ruddock, PhD, also supported a finding of 'not disabled' and indicated that the claimant's mental functioning was only mildly to moderately limited by his impairments (Exhibits 3F [Tr. 377-80 (Sept. 22, 2014)], 4F [Tr. 381-94 (Sept. 22, 2014)], 6F [Tr. 425-28 (Jan. 22, 2015)] and 7F [Tr. 429-42 (Jan. 22, 2015)]). Although those psychologists were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating psychologists, their opinions do deserve significant weight to the extent that they are consistent with the findings outlined herein as well as with the most recent evidence of record and the claimant's testimony that he performed work activity in 2015 and was capable of living independently until he lost his job.

The undersigned has given less weight to the treating source opinion offered by Sarah Frazier, MD, as the claimant was not receiving treatment or medication during much of the relevant period addressed in her statement and the mental status examinations she has conducted are fairly benign and indicate that the claimant's memory and concentration are intact, which is not consistent with the marked limitations noted in that area. In addition, she largely indicated that the claimant only has mild to moderate limitations, with some marked limitations in other areas that were generally noted to be intermittent. The undersigned has given more weight to the well-supported mild and moderate limitations Dr. Frazier has noted [Tr. 446-49 (Exhibit 9F (Oct. 7, 2015-Mental RFC Assessment)].[6]

The statement from Arthur Wallen, MS, was given limited weight, as Mr. Wallen is not an acceptable medical source for Social Security purposes, and his opinion that the claimant is in need of transitional services to help him move from childhood to adulthood is not necessarily relevant to the present proceedings. While it is true that the claimant appears to need some assistance in this

---

6 Dr. Frazier treated Plaintiff at Meridian. *See, e.g.*, Tr. 337-51, 353-68, 373-76, 634-41.

area, such supportive needs do not necessarily render an individual unable to work in any capacity.  Moreover, in the instant case, the claimant is a bright young man who was cooperative, polite, and socially appropriate at the hearing and who has been able to perform work activity in the past and appears to demonstrate the capacity to perform such activity again.  In this regard, the undersigned finds the claimant capable of performing work within the residual functional capacity and thus gives limited weight to Mr. Wallen's statement to the contrary.[7]

In accordance with Social Security Ruling 06-3p, the undersigned has considered the statements submitted by the claimant's parents (Exhibits 8E [Tr. 285-89] and 13E [Tr. 303-04).  While the claimant's parents are not considered acceptable medical sources under 20 CFR 404.1513/416.913, the undersigned considers them "Other Sources" who may have valuable insight into the severity of the claimant's impairments and how they affect his ability to function.  As they both reported observations that were largely consistent with the record and the claimant's testimony, the undersigned finds that these statements are likely a useful source of insight into the claimant's functioning and they were considered accordingly.  However, it is notable that, by virtue of their relationship with the claimant, the undersigned cannot consider these other sources entirely disinterested third party witnesses and their statements were discounted slightly in that regard.

In sum, the undersigned finds that the claimant has severe impairments that result in limitations to his functioning; however, he has no impairment, combination of impairments, or limitations severe enough to be disabling within the meaning of the Social Security Act.

Tr. 26-27.

---

[7]  Arthur M. Whalen, M.S., is the Associate Director of the Center for Autism and Related Disabilities at the University of Florida.  Tr. 443-45.  On October 1, 2015, Mr. Whalen provided a summary of Plaintiff's "disability features and to outline measures that will be needed to address his autism spectrum disability as he prepares for and participates in his adult transition."  Tr. 443.

The ALJ further determined that Plaintiff was born in 1996 and is a younger individual age 18-49; has the equivalent of a high school education and is able to communicate in English; and transferability of job skills is not an issue because the claimant does not have past relevant work.  Tr. 28; *see* Tr. 55, 259-60.  (Plaintiff has a general equivalency diploma (GED). *Id*.).

The ALJ further determined that since November 1, 2014, considering several factors, "there are jobs that exist in significant numbers in the national economy that the claimant can perform" such as industrial cleaner, kitchen helper/dishwasher, and hand packager, all medium exertion, unskilled, with an SVP of 2.[8]  *Id.*

---

[8]  The Dictionary of Occupational Titles (4th Ed., Rev. 1991), is one of the examples of sources that the ALJ may rely on for job information.  *See* SSR 00-4p; 20 C.F.R. § 416.966(d).  The ALJ may also rely on a vocational expert or other specialist. *See* § 416.966(e).  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, Specific Vocational Preparation (SVP), 1991 WL 688702.  An SVP of 2 allows for preparation time of "[a]nything beyond short demonstration up to and including 1 month."  *Id.*  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 416.968(a). Unskilled work corresponds to an SVP of 1-2 whereas semi-skilled work corresponds to an SVP of 3-4. Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  Several physical exertion levels are defined in the regulations.  *See* 20 C.F.R. § 416.967(a)-(e).

## III.  Analysis

A.

Plaintiff challenges the determination that his disability ended on

November 1, 2014, and contends that substantial evidence does not

support the decision because the record did not include and the ALJ

necessarily did not consider any of the "case development documents"

such as state agency medical opinions relevant to the March 18, 2014,

decision which found Plaintiff disabled as of the age of 17 ½.  ECF No. 18

at 6.  Plaintiff argues that he

> was so mentally ill at the age of 17 ½ that he was granted SSI
> benefits based solely on the medical evidence.  This means that
> either the state agency physician determined that he met or equaled
> a childhood listing, or that he was so developmentally delayed that he
> functional equaled a listing, because his impairment or combination of
> impairments resulted in either marked limitations in two
> developmental domains for an extreme limitation and one
> developmental domain.
>
> The March 2014 analysis that determined that Plaintiff
> Robinson met or equaled a listing, or that he had a functional listing
> equivalence which underlies the March 18, 2014[,] favorable decision
> exists outside this administrative record.  ALJ Koster's failure to
> include that fully favorable analysis by state agency physicians, in this
> administrative record, not only denies Plaintiff Robinson due process
> but prevents complete judicial review by this Court.  Therefore, prior
> to deciding this matter, this Court should direct the defendant
> Commissioner to supplement the administrative record with all of the
> medical and nonmedical documents available to the original
> decisionmakers in March 2014.

*Id.* at 7-8.  Plaintiff further suggests that two exhibits, 1A and 2A, Tr. 91-92,

clearly indicate that the [SSA] ceased Plaintiff Robinson's benefits - not because he had turned 18, and [h]is entitlement had been redetermined - but because other state agency physicians who reviewed the medical evidence determined that his entitlement to childhood SSI benefits had ceased.  Thus, the determination was based on application of the improper significant medical improvement standard to Plaintiff Robinson.  This is significant because: that is an error as a matter of law; and, the [SSA] is not allowed to reconsider the same medical evidence and decide this medical improvement.

*Id.* at 8.  Plaintiff argues that without reviewing the medical evidence that gave rise to a determination that Plaintiff was entitled to child SSI benefits, there is no basis, on this record, to determine that the condition has remained unchanged.  *Id.* at 9.  In other words, this case is about what the ALJ did not consider as opposed to what he did consider.

Plaintiff further argues that the ALJ violated the "well-established sit and squirm rule" when he made credibility determinations based on Plaintiff's hearing testimony.  *Id.* at 9-10.

Plaintiff requests this Court to direct the Commissioner to supplement the record, reverse the Commissioner's decision, and remand this case for a supplemental hearing.  *Id.* at 10.

                                    B.

Under 42 U.S.C. § 1382(a)(3)(H)(iii), individuals who are eligible for SSI as children must have their disability redetermined under the rules used to determine disability for adults.  That provision also requires that the

medical improvement standard under section 1614(a)(4) does not apply to disability redeterminations at age 18.  *See* 42 U.S.C. § 1614(a)(4); *see* Tr. 18-19.[9]  When a child is receiving SSI and attains 18 years of age, the agency reviews the transition to adult SSI applying the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(c)-(h).  As noted by the ALJ, Tr. 18-19, medical improvement is *not* a factor for consideration since the concept of redetermination is to treat the transition to adult SSI as a new application.  *See* 20 C.F.R. § 416.987(b) ("[W]e will not use the rules in § 416.994 for determining whether disability continues.");[10] 42 U.S.C. § 1382c(a)(3)(H).[11]

A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909 (duration requirement).

---

[9] Section 1614 of the Social Security Act is codified at 42 U.S.C. § 1382.  *See* Higginbotham v. Barnhart, 163 F. App'x 279, 280 n.1 (5th Cir. 2006) (unpublished).

[10]  Section 416.987(a)(2) states that "[w]e may find that you are not now disabled even though we previously found that you were disabled [as a child]."  Likewise, "[t]he finding of a childhood disability is not dispositive nor binding on the adult redetermination."  Lewis v. Comm'r Soc. Sec., No. 1:09–CV–2450, 2011 WL 334850, at *6 (N.D. Ohio Jan. 31, 2011).

[11]  The ALJ considered Plaintiff's SSI application in light of this five-step process. Tr. 18-20.

Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).

Pursuant to 20 C.F.R. § 416.987(b), in a redetermination of disability for a person turning age 18, the Commissioner uses the rules for adults who file new applications as explained in 20 C.F.R. § 416.920(c)(h).  *See supra* at 2 n.2.  First, the claimant must show he has a severe impairment. 20 C.F.R. § 416.920(c).  This step is a threshold inquiry, and the ALJ does not go on to the next step if the claimant fails to meet this step, but will find claimant is "not disabled."  *See also* McDaniel v. Bowen, 800 F.2d 1026, 1032 (11th Cir. 1986); 20 C.F.R. § 416.920(c).  Second, if the claimant shows that his severe impairment or combination of impairments meets or equals the criteria in the Listings of impairments, the Commissioner will find he is disabled.  20 C.F.R. § 416.920(d).  If the claimant's impairment or combination of impairments cannot meet or equal one of the listings, the ALJ considers at the next step whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work.[12]

---

[12] Pursuant to 20 U.S.C. § 416.920(e), in determining the RFC in a redetermination case, the Commissioner will use the RFC assessment at the fourth step of the five-step sequential evaluation process set forth in section 20 U.S.C. § 416.920(a)(4)(iv).

§ 416.920(e).  If the claimant establishes he cannot perform his past

relevant work, or if he has no past relevant work, the Commissioner will

consider the same residual functional capacity assessment made under

§ 416.920(e), together with the vocational factors of age, education, and

work experience, to determine if the person can make an adjustment to

other work.  If so, the Commissioner will find the person is not disabled.

*See* 20 C.F.R. § 416.920(g)(1).

This Court must determine whether the Commissioner's decision is

supported by substantial evidence in the record and premised upon correct

legal principles.  42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131

(11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less

than a preponderance.  It is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." <u>Bloodsworth v.</u>

<u>Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); <u>accord</u>

<u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The

Commissioner's factual findings are conclusive if supported by substantial

evidence." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1221 (11th Cir. 2002)

(citations omitted).[13]  The Court may not decide the facts anew, reweigh the

_____

[13] "If the Commissioner's decision is supported by substantial evidence we must
affirm, even if the proof preponderates against it." <u>Phillips v. Barnhart</u>, 357 F.3d 1232,
1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard,
however, does not permit a court to uphold the Secretary's decision by referring only to

evidence, or substitute its judgment for that of the Commissioner,

Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the

entire record, consider evidence detracting from the evidence on which the

Commissioner relied, and determine the reasonableness of the factual

findings.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v.

Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986).  Review is deferential, but

the reviewing court conducts what has been referred to as "an independent

review of the record."  Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir.

1985).

Plaintiff bears the burden of proving that he is disabled and,

consequently, is responsible for producing evidence in support of his claim.

See 20 C.F.R. § 416.912(a); Moore, 405 F.3d at 1211.  The responsibility

of weighing the medical evidence and resolving any conflicts in the record

rests with the ALJ.  See Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir.

2007) (unpublished).

---

those parts of the record which support the ALJ.  A reviewing court must view the entire
record and take account of evidence in the record which detracts from the evidence
relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).
"Unless the Secretary has analyzed all evidence and has sufficiently explained the
weight he has given to obviously probative exhibits, to say that his decision is supported
by substantial evidence approaches an abdication of the court's 'duty to scrutinize the
record as a whole to determine whether the conclusions reached are rational.' "  Cowart
v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

Case 1:17-cv-00213-MW-CAS   Document 20   Filed 06/15/18   Page 21 of 25

Page **21** of **25**

## C.

As noted above, Plaintiff argues the ALJ was required to apply the medical improvement review standard outlined in 20 C.F.R. § 416.994(b)(5). ECF No. 18 at 5-9; *see supra* at 15-16. Plaintiff cites, however, to regulations pertaining to continuing disability review and cessation of benefits cases. *See, e.g.*, 20 C.F.R. §§ 404.1590(a), 404.1594(a). ECF No. 18 at 9. These regulations explicitly state that the cessation of disability or medical improvement review standard does not apply in cases such as Plaintiff's where his eligibility was redetermined when he reached the age of 18. 20 C.F.R. § 416.987(b).

Plaintiff also argues the ALJ improperly did not include case development documents relevant to the prior decision and argues this amounts to a due process violation, *see supra* at 15-16. ECF No. 18 at 6-8. The Commissioner responds that "Plaintiff appears to incorrectly believe the ALJ was required to follow the medical improvement standard, which requires a comparison of prior and current medical evidence. See 20 C.F.R. § 416.994(b)(1)(vii), (2)(i)." ECF No. 19 at 6. The Commissioner continues that "there is no such requirement in Plaintiff's case as the concept of redetermination at age 18 is to treat the transition to adult SSI as a new application. See 20 C.F.R. § 416.987(b)." *Id.* Further, in

response to Plaintiff's argument that he has been deprived of due process by not considering the information as argued, the Commissioner argues that the ALJ provided Plaintiff with a full and fair hearing, referring to Mathews v. Eldridge, 424 U.S. 319, 335 (1976) and Cherry v. Heckler, 760 F.2d 1186, 1190-92 (11th Cir. 1985).  ECF No. 19 at 6.

Although Plaintiff suggests the record is incomplete and relies on general references to information that should have been considered, except as noted herein, Plaintiff has not identified evidence *in this* record, whether considered by the ALJ or otherwise, that supports his contention that he is disabled after November 1, 2014, as determined by the ALJ. Plaintiff's requests to supplement the record and to remand for a supplemental hearing should be denied.  Substantial evidence supports the ALJ's redetermination decision.

Further, contrary to Plaintiff's argument, the ALJ did not improperly engage in "sit and squirm" jurisprudence by considering Plaintiff's demeanor at the administrative hearing.  ECF No. 18 at 9-10.  "Sit and squirm jurisprudence" occurs where an ALJ subjectively arrives at an index of traits which he expects the claimant to manifest at the hearing and then denies the claim if the claimant falls short of the index.  *See generally* Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).  ALJs are not

prohibited from considering the claimant's appearance and demeanor at the hearing.  *See generally* Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987); *see also* 20 C.F.R. § 416.929(c)(3)(vii), (c)(4).  Here, the ALJ properly noted Plaintiff's demeanor at the hearing as one factor in discounting a statement from Arthur Wallen, MS, a non-acceptable medical source, who reviewed records and assessed Plaintiff's need for transitional services as he entered adulthood.  Tr. 27, 443-45; *see* 20 C.F.R. § 416.929(c)(3), (c)(4); Macia, 829 F.2d at 1011.

The ALJ noted, in contrast to Mr. Wallen's opinion that Plaintiff could not work unless he received three to five years of transitional assistance, Plaintiff showed at the hearing he was "a bright young man" who was cooperative, polite, and socially appropriate.  Tr. 27.  Plaintiff takes issue with the ALJ's statement that Plaintiff was able to perform work activity in the past, Tr. 27, but the record demonstrates that Plaintiff worked in an auto repair shop for about two months in 2015, although the work he did not rise to the level of substantial gainful activity.  Tr. 25-26, 59-60, 84-85, 255.  The ALJ did not err in noting Plaintiff's demeanor at the hearing and past limited work activity as undermining Mr. Wallen's opinion.

Finally, except as noted above, Plaintiff does not otherwise challenge the ALJ's decision or contest the ALJ's evaluation of his RFC, assessment

of the medical opinion evidence, his subjective statements, or his ability to perform other work.  Plaintiff did not meet his burden of proving he had disabling limitations and did not prove he could not perform the jobs identified by the vocational expert.  *See generally* Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  Substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled after November 1, 2014, within the meaning of the Social Security Act.

## IV.  Conclusion

Considering the record as a whole, substantial evidence in the record supports the ALJ's findings and the ALJ correctly followed the law. Accordingly, it is respectfully recommended that Plaintiff's request to supplement the record, reverse the Commissioner's decision, and remand for a supplemental hearing should be denied and the decision of the Commissioner that Plaintiff's disability ended on November 1, 2014, and that Plaintiff has not become disabled since that date should be **AFFIRMED** and Judgment entered for Defendant.  Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk should be directed to substitute Deputy Commissioner for Operations Nancy A. Berryhill as the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on June 15, 2018.

> **S/ Charles A. Stampelos**
> **CHARLES A. STAMPELOS**
> **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**